KALDENBACH (UNITED STATES v.). See Case No. 15.504.

## Case No. 7,599.

### In re KALLISH.

[Deady, 575.] [1]

District Court, D. Oregon. April 3, 1869.

BANKRUPTCY—DISCHARGE OF BANKRUPT—WILLFUL OMISSION IN SCHEDULE—OPPOSITION TO DISCHARGE.

1. A willful omission to state a debt due by the bankrupt to another in his schedule is good ground for refusing a discharge.

2. Quere. that persons not prejudiced by such omission, should not be heard to object thereto.

3. Discharge refused. the opposing creditor's right to be heard in opposition thereto not being questioned.

[In the matter of J. M. George Kallish, a bankrupt.]

Joseph N. Dolph, for petitioner.
M. W. Fechheimer, contra.

DEADY. District Judge. On June 13, 1868, Kallish was adjudged a bankrupt upon his own petition. On December 17, 1868, the bankrupt filed his petition for final discharge from his debts provable under the act [of 1867 (14 Stat. 517)]. At the date of filing the petition for discharge, no debts had been proved against the estate, but on January 22, 1869, four of the bankrupt's creditors proved their debts before the register, amounting in the aggregate to $2,363.98. On February 20, 1869, the creditors proving debts, filed their objections to the discharge, with five specifications, the first of which is as follows: 1. "That said bankrupt did willfully swear falsely in his affidavit annexed to his schedule, in that the said bankrupt fraudulently omitted to mention the existence of an unliquidated account. between himself and his brother-in-law, P. Horning." The remainder

---

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

of the specifications are substantially as follows: 2. The fraudulent omission from the schedule of a debt due the bankrupt from the said Horning of about $2,000. 3. That the bankrupt on or about January 1, 1865, gave a fraudulent preference to said Horning by conveying to him a saloon in the city of Portland for the purpose of delaying and defrauding his then existing creditors. 4. That the bankrupt is a trader in ice, and has failed since the passage of the bankrupt act to keep proper books of account. 5. That the bankrupt has concealed part of his effects from his assignee, in that he failed to disclose to the assignee the existence of the debt aforesaid, alleged to be due him from said Horning. The case was set for trial on March 22, and was heard by the court. Kallish and Horning were examined as witnesses on behalf of the opposing creditors. No other testimony was introduced.

On the argument, counsel for the creditors abandoned the specifications except the first. Kallish and Horning are brothers-in-law—the former having married the sister of the latter. Kallish has one child living and buried one last summer. Horning is a bachelor and lives in the same house with Kallish. In fact they appear to constitute but one family. They both testify that in the latter part of 1864, or the early part of 1865, Kallish sold and conveyed to Horning a saloon and small ice-house in Portland, and a salt-works near Portland. The saloon was valued at $600 and the salt-works at $2,500, but the sales were not made at once, nor do they state which was made first. At the time of these purchases they state, that Kallish owed Horning for money borrowed in 1863, about $1,000, for fifteen months' labor in 1863–4, at $75 per month, $1,125—in all—$2,125. At the time of the purchase of the salt-works Horning professed to pay for them by his two promissory notes of $1,250 each, payable in one and two years. Since then, Kallish (according to this testimony) has worked for Horning in the saloon and ice business without other wages than his support, and a promise of a part of the profits, if any should be made. Horning's notes have been long since delivered up and canceled—one of them within a month of the sale, and the other within a year. Shortly after the sales aforesaid, these witnesses testify that Horning paid for Kallish, money as follows: to laborers at salt-works about $250; to one Phillippi, for beer furnished saloon prior to Horning's purchase thereof, $600; to discharge mortgage on salt-works, $660—in the aggregate $1,510. This statement of their affairs makes the account between K. and H. stand thus: Horning owed K. for saloon and salt-works, $2,125. Kallish owed H. for borrowed money, labor and debts paid for him, as above stated, $3,625, leaving a balance due Horning from K. of $525. Whether these transactions actually occurred between these parties, or were merely simulated by them, to protect Kallish's property from the demands of his creditors, may be a question. The fact that K. was then largely in debt is a circumstance calculated to cast suspicion upon their integrity. His indebtedness, all or principally contracted before that time, is $5,021.46, while his assets are nothing. Besides, there is the fact that Kallish has since carried on the saloon and ice business, as Horning's agent, without salary or wages. Horning paying the expenses of the family, of which he is practically a member. However, counsel for the creditors does not press the consideration of this question, but insists that the proof supports the first specification, and for that reason, the discharge ought not to be granted. There can be no doubt from this statement of the accounts, but that there was a balance due from H. from K. The schedules of the bankrupt are silent on this point. Besides, both Kallish and Horning swear positively that now and on May 30, 1868, the date of the affidavit to the schedule and petition, the former is and was indebted to the latter. Horning testifies that this indebtedness of May 30, 1868, was between $600 and $800. Kallish testifies that on said date he owed H. about $500 or $600, more or less, but more than $300, and that he knew it when he made his oath to his schedule, but that he had no account of it. Assuming that this testimony is credible, the first specification is proved. The affidavit to schedule A declares, that the same "to be a statement of all his debts," while this indebtedness to Horning is not mentioned therein. The act (section 29) provides that: "No discharge shall be granted, or, if granted, be valid if the bankrupt has willfully sworn falsely in his affidavit annexed to his petition, schedule or inventory." No explanation is offered by the bankrupt, of this discrepancy between the proof and his affidavit to the schedule. The bankrupt now testifies that on May 30, 1868, he was indebted to Horning and that he knew it, while his sworn schedule of same date is silent as to the matter.

Upon this state of facts, the conclusion is natural and reasonable, that the omission to place this debt in the schedule was intentional, and that the affidavit annexed thereto was willfully false. But I am not prepared to determine, beyond further consideration, that under these circumstances the opposing creditors are injured by this omission or falsehood, or that any one ought to be allowed to object to the discharge on this account, unless it be Horning, to whom the omitted debt appears to be due. I am not altogether satisfied in my own mind, but that the act ought to be so construed that this objection could only be made by a creditor who is interested in the debt which is the subject of the misconduct of the bankrupt, or who is or may be injured by the omission or falsehood concerning it. But this question has not been made by counsel on the argument, and the case is within the letter of the pro-

vision of the act prohibiting a discharge, and an order will be made dismissing the petition for discharge.